[Civ. No. 3197. Fourth Dist. Feb. 21, 1947.]

BLANCHE M. HANNA, Appellant, v. COUNTY OF KERN, Respondent.

Calvin H. Conron, Jr., for Appellant.

Norbert Baumgarten, County Counsel, Harvey, Johnston, Baker & Palmer, and Oran W. Palmer for Respondent.

GRIFFIN, J.—Plaintiff, in her first cause of action, seeks to quiet title to property in the northwest quarter of section 36, township 28 S., R. 28 E., M. D. B. & M., lying north of the main channel of the Kern River as the same existed February 18, 1876. Her claim is based upon the supposition that plaintiff, appellant herein, and defendant, the respondent, have a common source of title which has tied them both down to a

fixed line in the Kern River as it flowed on February 18, 1876, and that since said date the river, by the natural action of accretion and alluvion has somewhere shifted and has deposited some 30 or more acres of soil from its north to its south side, which acreage she now claims.

The second cause of action is to fix the boundary between the lands of plaintiff and the lands of defendant in this section.

The third cause of action is to abate a claimed nuisance consisting of maintenance of dykes and levees by the defendant along the south bank of the Kern River in such manner as to divert the waters thereof upon the plaintiff's land.

The answer of defendant denies the material allegations of the first cause of action and alleges that the defendant is the sole owner and entitled to the exclusive possession of the property which lies south of the main channel of the Kern River as the same now exists or has existed at any time since the 18th day of February, 1876. It also alleges the affirmative defense that the defendant has been in open, notorious and adverse possession of the lands which lie south of the river now or at any time since that date. The second affirmative defense of the statute of limitations is likewise alleged.

As to the second cause of action the defendant denies the material allegations thereof and alleges the affirmative defenses of laches, adverse possession and the statute of limitations.

As to the third cause of action, defendant denies generally the allegations thereof and alleges as an affirmative defense that it maintains the dykes under the exercise of its police power in the protection of morals, health and safety. The affirmative defense of laches, adverse possession and the statute of limitations is also pleaded as an affirmative defense to the entire complaint. It is likewise alleged that plaintiff failed to file a claim with the board of supervisors in compliance with the provisions of the Political Code.

The Kern River runs westerly from the Sierra Nevada Mountains through a canyon into the foothills and finally the floor of the San Joaquin Valley. Like all such California rivers, it drains into the valley. It has seasonal flood periods. As the river leaves the mountainous area it is bounded on the south by high bluffs and upon the north by rolling foothills which gradually decrease in height as it progresses into the

valley. The bluffs and foothills finally merge into a hilly country in the vicinity of Bakersfield. The river in its progress through these bluffs and foothills follows a meandering course, sometimes through narrow canyons and sometimes through small valleys, some of which are several square miles in area. As it runs westerly through section 36, the property here involved, the river passes into one of these small valleys, through which its channel is of a meandering nature. The claimed meandering of the river through this section is the heart of the present controversy.

Plaintiff and defendant are at present adjoining landowners in section 36. Plaintiff's property is to the north of defendant's. Both claim title from a common source. An abstract containing the chain of title of both plaintiff and defendant was received in evidence in lieu of the production of the original instruments.

In defendant's chain of title the language used in the several deeds describing the north boundary of its claimed property is as follows: The deed of February 18, 1876: "Section 36 south of middle channel of Kern River as it now flows"; August 21, 1876: "Section 36 south of middle channel of Kern River as it now flows"; June 13, 1877: "Southern part of half of section 36, which lies south of the middle line of the main channel of Kern River as it now flows and for two years heretofore has flowed through said section"; July 14, 1879: "Southern part of half of section 36 which lies south of the middle line of the main channel of the Kern River as it now flows and for two years heretofore has flowed through said section"; June 9, 1879: "South half of section 36 which lies south of the middle line of the main channel of Kern River." The deed of March 27, 1886, contains a metes and bounds description and describes it as running from a point on the east line of section 36 "in a northerly and westerly direction along center of said river to a point."

On November 7, 1921, the Board of Supervisors of Kern County, by resolution, agreed to the purchase of the south half of section 36 for public park purposes, and in that resolution described the land as follows: "338 acres of land lying in the south half of section 36." A deed to the county, dated November 22, 1922, described the land by metes and bounds, beginning at the southeast corner of section 36 and running north along the east line of that section 47.67 chains

to a point in the center of Kern River, thence in a northerly and westerly direction along the center of said river to a point 33.60 chains south of the center of the north line of said section, thence in a westerly and southerly direction along the center of said river to a point 23 chains east of said center of the west line of said section, thence in a southerly and westerly direction along the center of said river to a point 55.20 chains south of the northwest corner of said section, thence south and east to the place of beginning, containing 338 acres more or less. The language "that lies north of the center line of the main channel as the same existed on February 18, 1876" did not appear in plaintiff's chain of title until used in a deed dated February 26, 1935, 14 years after defendant had acquired and gone into possession of the Kern County Park. On that date a deed was executed describing a portion of fractional section 36 "lying north of the main channel of Kern River, as the same existed on February 18, 1876." A similar description was contained in a deed dated February 28, 1935; and likewise in a deed dated April 6, 1935; December 23, 1936; December 6, 1937; and in a deed dated April 5, 1939, to Blanche M. Hanna, plaintiff herein.

After the county entered into possession of the property in 1922, it constructed a park for the benefit of the public, and there was expended thereon a sum of nearly $200,000. It built dykes along the south bank of the river, filled in certain sloughs and swails behind the dykes and planted the area to trees and shrubbery. It excavated a portion of the land and constructed an artificial lake. It is claimed by plaintiff that the banks and dykes so built force the river to flow in a semi-circular direction along the north bank of the river, and that her property is being damaged thereby.

It is her contention that the river channel changed its course since 1876, and now flows farther north; that as a result thereof, approximately 30 to 40 acres of her land lies south of the river and that the county has constructed its park mainly on her property.

In support of this claim there was received in evidence a map of a government survey made in 1855 which, it is claimed, showed the river as it flowed through the land here involved. This map, compiled from the field notes of that date, *1855*, does support plaintiff's claim. However, that was as of the date of 1855, 21 years prior to the deed executed in 1876, upon

which grant the defendant claims its title. Another map, the result of a mineral survey of section 36, made in June, 1901, and filed in the General Land Office, was received in evidence. It purports to show the north and south banks of the river as of the year 1901. It does not show where the main channel of the river ran as compared to those banks. Although the survey as thus indicated also supports plaintiff's claim, that survey is not in entire agreement with the survey of 1855. A map prepared from a survey made by the county surveyor of Kern County in 1943, was also received in evidence.

An engineer, a witness for the plaintiff, made a study of the river for her and a composite study of the survey above mentioned and he computed the area of the land to the north and south of the river in 1855, and in 1943, and found that there was a difference of 80.25 acres and claimed therefore that the river had so changed its course that now approximately 40 acres of land appearing to the south of the channel, as shown in the 1943 survey, appears to the north of the channel as shown in the 1855 survey.

The county surveyor of Kern County, from the same records, computed the difference and he approximated that difference to be 31 acres.

A Mr. Gribble, superintendent of the Kern River Levee District, who was familiar with the property located on exhibit 13, an aerial photographic map of section 36 taken just before the trial of this action, located the main channel of the river and fixed it in the vicinity of an object, referred to in the testimony as the "old mill," from which point he said the channel ran westerly in 1919 or 1920, which date was before the county purchased the park property.

A Mr. White, civil engineer in charge of excavating for the artificial lake, said he found redwood and cedar logs buried in the ground in the approximate location of the main channel as shown on the map of 1855, which was in the approximate location of the channel described by Mr. Gribble. This would put the location of the main channel described by the plaintiff's witnesses several feet south of the course of the present main channel as shown on the aerial map.

Several local citizens, oldtimers in the community, testified that the land in the area of the present parksite, was marshy and full of sloughs. In 1942, the county assessor of Kern

County, apparently after the survey of 1942, changed the acreage previously assessed to plaintiff on the tax rolls of the county by reducing it 31 acres. Plaintiff contends that she had no knowledge of the shortage until such change was made on the assessment roll.

The Hannas testified that in April, 1941, they had a survey made of their property; that they were assessed for 204 acres and believed that they owned that number of acres; and that they then discovered they were short about 30 acres. They also testified as to the changes in the river channel since they purchased it and the claimed change in it due to the erection of levees and embankments by defendant.

Charts and diagrams of rainfall and flow of water in California streams over the period involved were also received in evidence.

The trial court found first, that the center line of the main channel of the Kern River flowing through section 36 ''is in the same location now as it was on February 18, 1876, and that said center line of the main channel of said river has not meandered nor changed its course through said section since February 18, 1876'' and ''That defendant is the sole owner of and entitled to the exclusive possession of all the real property which lies south of the center line of the main channel of the Kern River as the same flowed on February 18, 1876, and as the same flows on this date''; second, ''that defendant has been in open, notorious and exclusive possession of all said real property, adverse to the plaintiff, and to her predecessors in interest, for more than five years . . . ''; third, ''That insofar as . . . the plaintiff claims any of said property, said claim is barred by the provisions of section 318 of the Code of Civil Procedure,'' and that ''the plaintiff is also guilty of laches and unreasonable delay in asserting said claim . . .''; fourth, ''That the defendant has not constructed nor is it now maintaining nor does it threaten to maintain or construct along the southerly boundaries of said Kern River immediately opposite or at any other point in said section 36 . . . any embankments or dykes which obstruct the free flow of the water of said river or in any way cause the water of said river to be diverted from its natural course''; fifth, that the plaintiff's third cause of action is barred by the provisions of section 338 of the Code of Civil Procedure. It then concluded that plaintiff was not entitled to any relief on any of the

causes of action in her amended complaint, and judgment was entered accordingly.

We therefore conclude that if there was sufficient substantial evidence to support the trial court's finding that the center line of the main channel of the river has been and is now in the same location as it was on February 18, 1876, then there is no necessity of determining the other claims of title by adverse possession, laches, or the bar of the statute of limitations, as alleged and found by the trial court.

The superintendent of the Kern River Park testified that he was employed there in 1936; that "outside of where we straightened it (the river) up it runs practically the same as it did only there is more water in the south side than there was in 1936"; that an island has been formed on the north side of the river; that he had been "pulling trees out of the south side and pushing the dirt up against the bank, making a grade slope for beaches"; that he opened up a channel there for the water to go through and made a beach where people could go and swim; that he raised the original dykes "a little"; that nothing has been built "out into the river"; that the dykes were built to protect the park "in high water."

A Mr. Curran, resident of Bakersfield for 61 years, testified that in 1883 he was employed by a canal company and he was employed every day to watch the water measuring board at Kern Island and patrol the river on horse; that he patroled on the north bank near the present site of the park. He was asked: "Q. Will you state to the court whether or not the main channel of the Kern River was changed during that period of time?" He answered: "Well, it doesn't seem to me it has changed. Q. And that is particularly in reference to where the park now is? A. Yes, along the north side I cannot discover any change in the river, of any consequence. Q. Now, where the park is situated, will you describe to the court just what the situation was at the park with reference to canals or sloughs? A. Well, there were some sloughs in there, but of course I couldn't tell just the location then, only I knew the general character of the river running up to where I crossed it, and I went up to see if there was any more water coming down and I didn't notice any, during the whole time I was there when the wier was built. Q. And up to the present time you have not noticed any material change? A. No, I have not noticed any material change up to the

present time.'' On cross-examination, he testified: ''Q. And you didn't have in mind any fixed observation of fixing the channels or exact places where the river might be flowing by? A. No. Q. And you are speaking generally now when you say that the river looks the same as it did then? A. Yes. Q. And your examination never was such that you made any close examination of any particular area? A. No, except I rode along that dam to the other side and went up, and then I would cross the river, and came down on the bluffs, and come on home if there was not any change.''

A Mr. Smoot, a rancher raising cattle on the river, testified that 40 years ago he first went into that area; that where the county park is now ''it was just dry land,'' i. e., ''there was not anything there only just some places there was backwater along the old Kern County Park there''; that the river is ''substantially in the same place as it was.''

Mr. Thornton, County Surveyor for 24 years, testified that he was particularly familiar with the park from 1921 to 1934; that he knew where the channel of the river was in 1921, and at the present time; that there has been no change in the main channel of the river between those dates; that he studied plaintiff's exhibit 12, the mining claim survey of 1901, and that he checked it and at one point thereon the river seemed to be 1,100 feet wide and that he went out on the ground and made a survey of the cross-section indicated at that point; that by taking the area indicated, the flow of the river would be ''entirely out of line with the record,'' that is, that the flow would be ''2 or 3 times more than would be required to flood the city of Bakersfield,'' and that the actual flow of the river as taken from the records would be about 200 rather than 1,100 feet. He then testified that he drew a transparent map (Exhibit D) based on the field notes made by W. R. MacMurdo, County Surveyor in 1880 (photostatic copies of these field notes are in evidence), in reference to the location of the Kern River as of that date and as it crossed section 36; that the notes referred to the ''right bank on the north side of the river'' and to the ''left bank on the south side of it'' and are tied into another section northwest of sections 24, 29 and 28; that he measured from these points out from various banks of the river and that he could actually locate those points on the map; that he placed this tracing (Exhibit D) upon the aerial photograph (Exhibit H) showing the present location of the banks and channel of the river as it crossed

section 36; that it "roughly coincides with the top of the bluffs as they appear in the photograph." (Our comparison of the two exhibits would result in the same conclusion), that Mr. MacMurdo does not "name the channel" on his notes but does name the "right and left bank." He then examined plaintiff's Exhibit 9, showing the present main channel of the Kern River, and compared it with the flow of the river according to the map of 1880, and testified that the two "maps compared very favorably," i. e., they compared substantially. After examining the chart in evidence indicating rainfall in inches in that area from 1874 to 1888 and also the comparative runoff or relative flow of the Kern River from 1871 to 1920, he testified that he remembered high water in 1914 and the floods of 1916, of 1941 and 1943, and that during all of those periods the course of the river through the park property made no appreciable change; that he did not think that the embankment built by the county changed the course of the river as it relates to the Hanna property.

Defendant then presented the editor of the local newspaper as a witness, who produced old copies of the news accounts of January 4, 1868, depicting a great flood of the Kern River as of that date.

Mr. Latta, history teacher in Bakersfield High School, testified that he has been compiling, since 1906, the history of the valley by searching records, interviewing pioneers and writing treatises on Kern County; that he is familiar with the "behavior" of the Kern River; that in the 1867-8 flood a great area slid from the mountain on the south, and an artificial dam was created and the water backed up many hundreds of feet deep; that when it reached the top of the artificial dam it cut through rapidly and brought down a tremendous amount of water about 100,000 second feet and flooded all of the area in question; that the history of that flood is that it changed the channel of the Kern River at Bakersfield; that there has been no such flood in that river since; that the course now taken is practically as it was after the flood of 1868.

The crucial point that was presented for the trial court to decide was the course of the center of the main channel of the river as of February 18, 1876. A summary of plaintiff's evidence indicates that there was sufficient substantial evidence supporting her contention that the center of the

main channel of the river was south of its present location as it crossed section 36 in the year 1855, and also south of its present location in subsequent years. Had the trial court determined that issue in plaintiff's favor we would have been compelled to uphold such finding. However, there is sufficient substantial evidence supporting the finding of the trial court that the center of the present main channel of the river runs in the same location as it did in the year 1876. Under such circumstances, we are confronted with the familiar rule that wherever there is a fair and reasonable amount of evidence to support the finding of the trial court, it will not be disturbed by the appellate court, even though, in its opinion, it may be against the preponderance of the evidence. (*In re Wilson,* 117 Cal. 262 [49 P. 172, 711].)

The evidence respecting the claimed damage to the Hanna property, i. e., that the free flow of the water has been obstructed by the erection and maintenance of embankments and dykes by the county, is in substantial conflict. That question must abide the same rule in reference to the finding on the previous issue. In view of this determination it becomes unnecessary to review or discuss the merits of the other findings made on the question of adverse possession, statute of limitations, and laches.

Judgment and order affirmed.

Barnard, P. J., and Marks, J., concurred.